C M, INC., a corporation

v.

The CANADIAN INDEMNITY CO., etc., et al.

No. CIV 78–5080.

United States District Court, D. South Dakota.

Jan. 14, 1980.

Charles M. Thompson, Pierre, S. D., for plaintiff.

Joseph M. Butler, James W. Olson, Gene R. Bushnell, Rapid City, S. D., A. P. Fuller, Lead, S. D., Brian B. Meyer, Onida, S. D., Mark J. Feinberg, Minneapolis, Minn., Ronald W. Banks, Gene N. Lebrun, Rapid City, S. D., for defendants.

## MEMORANDUM OPINION

BOGUE, District Judge.

This case concerns an attempt by plaintiff, C M, Inc. (hereinafter C M) to recover certain insurance proceeds under a comprehensive business liability policy issued by defendant. Canadian Indemnity Company (hereinafter C. I.) to C M. The facts surrounding this case are set out below.

In March of 1974, C M entered into a contract with defendant. Homestake Mining Company (hereinafter Homestake) whereby C M was to perform mine development work for Homestake. Under the contract C M agreed to hold Homestake harmless on account of "all claims, damages, losses, litigation, expenses, counsel fees and compensation arising out of injury (including death) sustained by or alleged to have been sustained by [C M or C M employees] . . caused in whole or in part by the acts or omissions of C M." (Exhibit 3, ¶ XIII).

On February 14, 1976, C M employees Richard Bauer and Timothy Breneman were fatally injured in the course of their employment. As a result of this accident, on March 14, 1978, defendant Robert LaFleur, who was acting as the Special Administrator for the Bauer and Breneman estates, brought wrongful death actions against Homestake and defendant Donald Legault, who was a supervisory superintendent employed by C M. LaFleur alleged that their negligence had caused the deaths of Bauer and Breneman. Homestake thereafter brought a third party complaint against C M based on the hold harmless agreement in its contract with C M.

At the time of the accident C M had a Comprehensive Business Liability Policy which had been issued by C. I. (Exhibit 4) and a Workmen's Compensation and Employers' Liability Policy which had been issued by Employer's Insurance of Wausau (Exhibit 5). When served with Homestake's third party complaint, C M tendered the claim for defense under both of these policies. Both C. I. and Wausau denied coverage. This case is concerned only with C. I.'s position that there was no coverage under the policy it has issued.

This case was commenced by C M as a declaratory judgment action on September 19, 1978. On October 2, 1978, C. I. again informed C M that it felt there was no coverage under the policy it had issued.

On December 1, 1978, C M's counsel advised C. I. of potential settlements between LaFleur, Legault, Homestake and C M. C. I. still refused to defend and thereafter the settlements were entered into. (Exhibits 18 and 19). The settlements provided that a judgment be entered in favor of LaFleur and against Homestake in the amount of $350,000 in regard to the death of Bauer and in the amount of $265,000 in regard to the death of Breneman. Furthermore, it was agreed that a judgment be entered for the same amounts of money, plus various costs incurred by Homestake, in favor of Homestake and against C M on the basis of their hold harmless agreement. The settlement further provided that the judgment against C M could only be collected out of the insurance proceeds allegedly due C M from C. I. or Wausau. Finally, Homestake agreed to assign its judgment against C M to LaFleur. Thus, after all was said and done, this action became an attempt by LaFleur, who had stepped into the shoes of C M, to recover the insurance proceeds allegedly due C M from C. I.

There are three main issues to be dealt with in this case. (1) Is coverage afforded to C M under the business liability policy issued to C M by C. I.? (2) Was the settlement entered into by LaFleur, Legault, Homestake and C M collusive and in bad faith so as to relieve C. I. of any liability under the terms of the settlement? (3) Is C M entitled to collect attorney's fees from C. I. for C. I.'s refusal to defend under the policy?

The first issue to be addressed will be that of coverage. The relevant Insuring Agreement reads as follows:

## TO PAY ON BEHALF OF THE INSURED

3) *Contractual Bodily Injury or Illness* —All sums resulting from the liability imposed by law upon any third party for loss or damage because of bodily injury to, or the illness or death of any person or persons where the Insured has incurred liability therefor under the terms of an agreement wholly in writing.

The exclusion upon which C. I. relies is contained in Endorsement 3 of the policy and provides:

The coverage given by this policy does not apply to:

2) The liability imposed upon the Insured by any Workmen's Compensation Plan or Agreement or for bodily injury to or the illness or death of any employee of the Named Insured while engaged in the business operations of the Insured, other than where an Insured has made contributions to the Workmen's Compensation Plan on behalf of an employee and where protection of the Act is denied.

There appears to be no dispute that the hold harmless agreement contained in the contract between Homestake and C M would fall under Insuring Agreement 3 and the policy would provide coverage in the absence of any exclusions. The main issue in regard to coverage is whether exclusion 2, as amended by Endorsement 3, excludes coverage in this case.

Pursuant to a pretrial motion by C. I., this Court, under the authority of S.D.C.L. 53–1–4, determined that the insurance policy in question should be governed by the law of British Columbia. Therefore, in determining the issue of coverage this Court has attempted to rule as it believes a British Columbia court would rule.

At trial, C. I. produced an expert on Canadian law and provided the Court with a number of Canadian cases in support of its position. C. I. argues that on the basis of the expert's testimony and the authority presented there is sufficient Canadian case law on which to base a decision in this case and that this Court need not look to United States case law to assist it in making its decision. This Court, however, does not agree. While the cases supplied by C. I. do make the Court aware of some general principles of Canadian insurance law, none of them are factually similar to the case at bar. It is the Court's feeling that a Canadian court confronted with this case would look to the case law of the United States for authority. This feeling is buttressed by a statement made in *Co-op Fire & Casualty Co. v. Saindon,* (1975) 56 D.L.R. (3d) 556 (Supreme Court of Canada), wherein it was stated: "Cases in the United States on insurance matters have been freely cited in Canadian Courts because form policies developed in the United States have found their way into policies issued by insurers here." Furthermore, C. I.'s Canadian law expert admitted that Canadian courts frequently look to United States decisions in the area of insurance law.

This Court has been presented with no Canadian case which dealt with an employee exclusion such as is involved in the case at bar. The Court, however, has discovered several United States cases dealing with such exclusions. Thus, the Court will look at the United States cases cited by C M and consider the arguments C M makes on the basis of these cases. C M advances three basic arguments in support of its position that there is coverage in this case. First of all, C M argues that a decision in favor of no coverage would create a hiatus in coverage, which would not be proper. It is C M's position that its Workmen's Compensation and general liability policies dovetail to provide complete coverage and that the general liability policy should provide coverage in this instance. Secondly, C M asserts that the exclusion in question was intended only to cover claims brought by an employee directly against his employer and not claims brought for employee injuries against the employer indirectly through a third party. And finally, C M argues that the exclusion in question deals only with Workmen's

Compensation and employer's liability claims and not with liability resulting from contract. In support of these arguments C M relies on three cases. In all these cases an employee exclusion was held to not exclude coverage.

*Tiffiny Decorating Co. v. General Accident Fire & Life Assurance Corp.*, 12 Ill. App.3d 597, 299 N.E.2d 378 (1973), involved an exclusion that denied coverage for employee injuries except where such liability was assumed by contract. The main question in that case was whether an unwritten indemnity agreement constituted a contract under the policy. That issue is quite different than that with which we are concerned in the instant case. Here, none of the parties have argued that the hold harmless agreement was not a contract under the policy.

C M relies on certain language in the *Tiffiny* case regarding the dovetailing of Workmen's Compensation and comprehensive liability policies. The *Tiffiny* case indicated that the Workmen's Compensation and comprehensive liability policies involved in that case were meant to cover all claims arising out of injury to an employee. The statement regarding coverage relied on by C M, however, was based on an admission by the defendant insurance company who had issued both the Workmen's Compensation and general liability policies. It hardly establishes a general rule or is in any way applicable to the case at bar. In this case the two policies were issued by separate insurers and there is no admission by either of those insurers that the policies were meant to dovetail.

Another case relied on by C M which is distinguishable from the case at bar is *Larson Construction Co. v. Oregon Automobile Insurance Co.*, 450 F.2d 1193 (9th Cir. 1971). In that case the court considered an employee exclusion to be inapplicable where the insured's liability was based on an indemnity theory. The reason given for this decision was that the language of the exclusion was narrower than the language of the insuring clause. The insuring clause in *Larson* provided coverage for "all sums which the insured shall become legally obligated to pay as damages because of . . . BODILY INJURY. . . ." *Id.* at 1195. The exclusion relied on by defendant in *Larson* excluded from coverage "bodily injury to any employee. . . ." *Id.* at 1196. Because the exclusion was felt by the court to be narrower than the insuring agreement the court felt the exclusion applied only to suits brought by an employee directly against his employer and thus coverage was denied.

In the case at bar, the language of the insuring agreement begins with the words, "All sums resulting from the liability imposed by law. . . ." The exclusion begins with the words, "The liability imposed upon the Insured. . . ." Unlike the *Larson* case, the exclusion language is not narrower than the insuring agreement language in the present case. Therefore, *Larson* is inapplicable to this case.

The third case cited by C M is *Indemnity Insurance Co. of North America v. California Stevedore and Ballast Co.*, 307 F.2d 513 (9th Cir. 1962). That case involved a declaratory judgment action brought by plaintiffs California Stevedore and Ballast Company. Plaintiffs were contracting stevedores insured under a liability policy issued by defendant Indemnity Insurance Company. Several of plaintiffs' employees were injured while working as longshoremen aboard a ship and brought suit against the shipowners. The shipowners then brought third party actions against plaintiffs seeking indemnity. Plaintiffs asked defendant to defend under the liability policy, but defendant refused based on an exclusion which provided that,

"This policy does not apply under coverage A [Bodily Injury Liability] except with respect to liability assumed under written contract, to bodily injury to or sickness, disease or death of any employee of the insured while engaged in the employment of the insured, other than a domestic employee for whose injury benefits are not payable or required to be provided under any workmen's compensation law; or to any obligation for which

the insured or any company as his insurer may be held liable under any workmen's compensation law. . . ."

The court, in holding there was coverage for plaintiffs, held that an implied-in-fact agreement between the shipowners and the plaintiffs was a written contract within the meaning of the above-quoted exclusion and thus this exclusion was not applicable. While this holding is clearly distinguishable from the case at bar because of differences in the insurance policies involved, C M cites dicta from the *Indemnity* case to support its position.

The *Indemnity* court, after finding the exclusion inapplicable because there was a written contract, stated that even if the exclusion was applicable there would have been no coverage because the exclusion was only concerned with Workmen's Compensation or employer's liability and did not cover a claim based on contract, such as the claim in question. This Court has difficulty understanding the dicta of the court in the *Indemnity* case. From the portions of the policy quoted in the opinion it is hard to see why the court felt the exclusion dealt only with Workmen's Compensation or employer's liability. Nonetheless, this Court does not feel that the exclusion in the instant case deals only with Workmen's Compensation or employer's liability claims. The exclusion states that the policy does not cover liability imposed on the insured "by any Workmen's Compensation Plan or Agreement *or* for bodily injury to or the illness or death of any employee of the Named Insured while engaged in the business operations of the Insured. . . ." This exclusion clearly covers both Workmen's Compensation claims and other liability resulting from employee injury. Therefore, the dicta in the *Indemnity* case is not controlling here.

Another case which at first blush appears to be supportive of C M's position is *Ackerman v. Southern Wood Piedmont Co.*, 409 F.Supp. 469 (E.D.N.Y.1976). In that case plaintiff sued several contractors for injuries sustained at a construction site. The contractors impleaded plaintiff's employer

as a third party defendant seeking contribution. Plaintiff's employer then brought a fourth party complaint against Home Indemnity Co. who had issued automobile and general liability policies to plaintiff's employer. The court was faced with the decision as to whether coverage was excluded under the policies issued by Home, which both contained employee exclusions.

The comprehensive liability policy issued by Home excluded coverage for,

"bodily injury to any employee of the insured arising out of and in the course of his employment by the insured *or to any obligation of the insured to indemnify another because of damages arising out of such injury* . . . ." *Id.* at 473. (Emphasis added by *Ackerman* court.)

On the other hand, Home's automobile policy excluded only, "bodily injury to any employee of the insured arising out of and in the course of his employment by the insured . . . ." *Id.*

The *Ackerman* court found coverage as to the automobile policy. The court reasoned that if Home had intended to exclude indemnity claims under its automobile policy it would have specifically done so as it did in the comprehensive liability policy it issued.

Again, this case, like the others previously cited, is distinguishable from the case at bar. The main distinguishing feature is that in *Ackerman* both policies were issued by the same company. This is the same situation as existed in *Tiffiny, supra.* Where the same company issues two policies it might be expected that these two policies should be somewhat consistent and in some cases might be found to dovetail and provide somewhat more coverage than policies issued by different companies.

In *Ackerman* the comprehensive liability policy clearly excluded indemnity claims. The automobile policy, on the other hand, did not exclude them as clearly as did the comprehensive liability policy. In such a case it seems reasonable for the court to ask why the insurance company that issued both policies would not exclude certain coverage as clearly in one as it did in the other.

In *Ackerman* this apparent ambiguity was decided in favor of the insured and coverage was afforded.

There is, however, no such ambiguity in the case at bar. The exclusion relied on by C. I. in this case is clear. There is no other policy issued by C. I. to C M which excludes coverage for employees any more clearly than the policy in question. While it is true that the Workmen's Compensation and Employers' Liability Policy issued by Wausau also appears to exclude coverage in this case, it cannot be argued that this fact alone is enough to make ambiguous C. I.'s apparently clear exclusion.

A couple of other United States cases have dealt with fact situations similar to that involved in the case at bar. One of these is *Parfait v. Jahncke Service, Inc.*, 484 F.2d 296 (5th Cir. 1973). That case involved an injury to an employee of Yo-Ro Diesel Service who was hurt while working aboard a dredge owned and operated by defendant Jahncke. The injured employee sued the defendant, who then filed a third party claim against Yo-Ro for indemnity. Yo-Ro was insured under a general liability policy issued by Travelers Indemnity Company and a Workmen's Compensation and employers' liability policy issued by Home Indemnity Co. The applicable exclusion in the Travelers policy read as follows:

"This insurance does not apply to: (h) *bodily injury* to any employee of the insured arising out of and in the course of the employment by the insured; but this exclusion does not apply to liability assumed by the *insured* under an *incidental contract.*" (Emphasis in original)

There was no incidental contract involved, so the question came down to whether the employee exclusion was applicable to third party claims asserted by defendant against Yo-Ro. Yo-Ro, like C M in the case at bar, argued that the exclusion concerned only liability resulting from an action brought by an injured employee directly against his employer and was not concerned with an obligation to indemnify a third party which has been found liable to compensate an employee of the insured. The

district court agreed with Yo-Ro's argument, but the Fifth Circuit Court of Appeals reversed, holding that the exclusion did deny coverage. The court stated:

"Exclusion (h) provides expressly that the insurance does not apply to injury to the insured's employees in the course of their employment. The employee status of the injured victim is made the key to the exclusion, not the procedural route by which the liability comes to rest on the insured. Bodily injury coverage of the policy extends only to. non-employees. We do not find such an exclusion anomalous in Travelers' "Commercial Automobile—General Liability Policy," for employee injuries have long been treated as a special kind of risk and covered under special policies." *Id.* at 306.

Coverage for the defendant in *Parfait* was found to exist under the Workmen's Compensation and employer's liability policy issued by Home Indemnity Co. The reasoning for finding coverage under this policy was the same as was employed in *Larson, supra*. That being that the applicable exclusion language was narrower than the language of the applicable insuring agreement. As stated earlier in this opinion, this Court does not find the applicable exclusion in the instant case to be narrower than the insuring agreement and thus finds the *Parfait* court's holding as to the policy issued by Home Indemnity Co. to be distinguishable.

A somewhat similar case is *Farmers Elevator Mutual Insurance v. American Mutual Liability Insurance Co.*, 185 Neb. 4, 173 N.W.2d 378 (1969). In that case, Farmer's Co-op contracted with Wilmac Construction Company for the remodeling of a grain elevator. The contract included a hold harmless agreement given by Wilmac to Farmer's Co-op. During this remodeling job an employee of Wilmac was injured. The employee sued Farmer's Co-op who brought a third party complaint against Wilmac on the basis of the hold harmless agreement. Subsequently, Wilmac's general liability carrier, Empire Fire and Marine Insurance Company, denied coverage on the basis of the following policy exclusion.

"(h) under coverage B, except with respect to liability assumed by the insured under a contract as defined herein, to bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of his employment by the insured . . . ." *Id.* at 382.

The court found the hold harmless agreement did not fall under the policy's definition of a contract so the court had to determine whether the employee exclusion excluded coverage for the third party complaint. The court, quoting from Couch on Insurance, found that the policy exclusion was applicable even though the employer's liability to the employee was based on the hold harmless agreement.

The *Parfait* and *Farmer's Elevator* cases lend significant support to C. I.'s claim that the employee exclusion in C M's policy denies coverage for the Bauer and Breneman wrongful death actions. Both cases rebut C M's argument that an exclusion like the one in question is only meant to exclude coverage for suits brought directly against the employer by an employee. In both cases the claim against the insured was a third party action based on injury to the insured's employee and in both cases there was held to be no coverage under the applicable general liability policy.

Another argument asserted by C M is that the policy should be construed in favor of the insured. In Canada this is known as the principle of *contra proferentem*. This principle was stated in the case of *Pentagon Construction Co., Ltd. v. United States Fidelity & Guarantee Co.,* (1977) I.L.R. 3124 (B.C.C.A.). The court quoted from *Cornish v. Accident Insurance Co.,* (1889) 23 Q.B.D. 453 (C.A.):

"In a case on the line, in a case of real doubt, the policy ought to be construed most strongly against the insurers; they frame the policy and insert the exceptions. But this principle ought only to be applied for the purpose of removing a doubt, not for the purpose of creating a doubt, or magnifying an ambiguity, when the circumstances of the case raise no

real difficulty." *Pentagon Construction* at 3129.

A similar rule of construction is also well developed in United States case law. *See* Appleman, *Insurance Law & Practice,* Vol. 6B § 4254 at pp. 24–25, 30–31, and Vol. 13 § 7486 at pp. 622–23, and Keeton, *Insurance Law, A Basic Text,* § 6.3(a) at p. 356.

Where exclusions are clear, the Canadian courts have shown a willingness to uphold their terms even at the risk of somewhat harsh results. *See Pickford & Black, Ltd. v. Canadian General Insurance Co.,* (1976) I.L.R. 2531 (Supreme Court of Canada), *Straits Towing Ltd. v. Walkem Machinery and Equipment Ltd.,* (1973) 5 W.W.R. 212 (B.C.C.A.), and *Dominion Bridge Co. Ltd. v. Toronto General Insurance Co.,* 37 W.W.R. 673 (B.C.C.A.).

■ In regard to the case at bar, this Court feels the exclusion is clear and the *contra proferentem* principle would not be invoked by a British Columbia Court. The exclusion states in part: "The coverage given by this policy does not apply to: 2) The liability imposed upon the Insured . . . for bodily injury to or the illness or death of any employee of the Named Insured while engaged in the business operations of the Insured. . . ." Bauer and Breneman were both employees of C M, the named insured, and were killed in the course of their employment. This Court does not consider the above-quoted exclusion to be ambiguous. Furthermore, this Court does not wish to create an ambiguity where none exists and therefore holds that C. I. is not liable for C M's debt to Homestake resulting from the deaths of C M's employees Bauer and Breneman.

The foregoing decision on the coverage issue precludes any necessity for the Court to go into the issue of whether the settlement was collusive and in bad faith. As for C M's claim for attorney's fees, it will be denied on the basis of *Luke v. American Family Mutual Insurance Co.,* 476 F.2d 1015 (8th Cir. 1973).

■ C M asked for attorney's fees under S.D.C.L. 58–12–3 which states:

In all actions or proceedings hereafter commenced against any insurance company, including any reciprocal or interinsurance exchange, on any policy or certificate of any type or kind of insurance, if it appears from the evidence that such company or exchange has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause, the department of labor, the trial court and the appellate court, shall, if judgment or an award is rendered for plaintiff, allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs, provided, however, that when a tender is made by such insurance company or exchange before the commencement of the action or proceeding in which judgment or an award is rendered and the amount recovered is not in excess of such tender, no such costs shall be allowed. The allowance of attorney fees hereunder shall not be construed to bar any other remedy, whether in tort or contract, that an insured may have against the same insurance company arising out of its refusal to pay such loss.

This statute was considered in *Luke, supra,* at 1022. In holding that the plaintiff in *Luke* was not entitled to recover attorney's fees, the court emphasized four factors: (1) that the defendant insurance company conducted a thorough investigation of the facts relative to the issue of coverage; (2) that the plaintiff was promptly notified of the decision to deny coverage; (3) that the clause upon which coverage turned had not been interpreted by the state Supreme Court; and (4) that the interpretation relied on by the insurer in reaching its decision to deny coverage was not unreasonable.

It appears to the Court that these factors have been complied with in the case at bar. C. I. appears to have made a thorough investigation and promptly notified C M of their intention to deny coverage. Furthermore, no court in either British Columbia or South Dakota has previously ruled on the issue before this Court. Therefore, it certainly was not unreasonable for C. I. to deny coverage. Based on the *Luke* test, C M has no right to recover attorney's fees under S.D.C.L. 58–12–3.

The foregoing opinion shall constitute this Court's findings of fact and conclusions of law.