**Moses SAMUEL, Jr., et al.**

v.

**CHEVRON U.S.A. INC.**

**Civ. A. No. 82–302–B.**

United States District Court, M.D. Louisiana.

June 28, 1984.

Lawrence K. Benson, Jr., Charles F. Seabolt, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for defendants.

Sam J. D'Amico, D'Amico, Curet & Dampf, Baton Rouge, La., for plaintiffs.

## OPINION

POLOZOLA, District Judge.

This action was originally filed on behalf of Moses Samuel, Jr. and Girlie Mae Fabre Samuel in the Eighteenth Judicial District Court for the Parish of Pointe Coupee, Louisiana. Thereafter, the case was removed to this Court. Named as a defendant in the original suit was Chevron U.S.A. Inc. (Chevron).

Plaintiffs sought damages from Chevron for the wrongful death of their son, Carlton Linus Samuel, who drowned on proper-

ty which was subject to a mineral lease in favor of Chevron.

After the suit was filed, Chevron filed a third-party demand seeking indemnity or contribution from Norbert Hurst, who is one of several co-owners and co-lessors of the land leased to Chevron for mineral exploration and production.

Chevron argued in this third-party demand that if it was negligent in causing the death of Carlton Linus Samuel, Norbert Hurst was also a negligent joint tortfeasor, and as such, would owe contribution to Chevron.

Hurst answered Chevron's third-party demand and filed a counterclaim against Chevron. Hurst claims that by virtue of indemnity provisions contained in the mineral lease of which he is assignee, Chevron would be obligated to indemnify him for any amount that he may be required to pay them in contribution. Hurst also claims that by virtue of the indemnity agreement, Chevron is required to indemnity him for attorney's fees and costs he has expended to defend this suit.

On March 8, 1984, Chevron notified Hurst through his attorney of record that the main demand of the Samuels against Chevron was in the process of being settled for $3,900. Chevron requested that Hurst join in the settlement or object to its reasonableness. Hurst did neither. On March 16, 1984, the Samuels' main demand against Chevron was settled for $3,900 and Chevron specifically reserved its rights to contribution from Hurst.

The claims now before the Court are Chevron's third-party demand for contribution from Hurst and Hurst's counterclaim for indemnity and attorney's fees and costs from Chevron. For reasons which follow, the Court finds that Chevron's suit should be dismissed and that Hurst is entitled to attorney's fees incurred in defending this action.

On October 8, 1980, the co-owners and co-mineral lessees of the land on which Carlton Linus Samuel drowned, including Norbert Hurst, executed a "Surface Agreement" with Chevron whereby Chevron was granted a "right-of-way easement and servitude fifty feet in width to construct .... a road ... and to construct ... pipelines." Pursuant thereto, Chevron constructed a limestone access road which connected Chevron's gas well with a highway. In addition, Chevron installed a pipeline that connected Chevron's gas well with gas transmission pipelines. The limestone road and pipeline crossed a waterway known as "Stumpy Bayou" in the vicinity where Carlton Samuel drowned. This construction resulted in Stumpy Bayou being deeper at that point than prior to the construction. Hurst witnessed the construction of the road and the laying of the pipeline across and under Stumpy Bayou.

The evidence shows that the property on which the decedent drowned was used for hunting, cycling, and crawfishing. Hurst also allowed the elder Samuel (the decedent's father) and his children to graze cows on the property. They were also allowed free access into and from the property.

On the day that Carlton Samuel drowned, Hurst saw him and other teenagers enter his property through a breach in the fence separating the Samuel's property from Hurst's property. They were riding "three wheelers" at this time. Apparently the teenagers observed a large piece of styrofoam laying on the ground and decided to try to float on it in Stumpy Bayou. At some point this make shift "raft" turned over resulting in Carlton Samuel being drowned. The evidence indicates that Hurst did not observe anything other than the fact that the boys were riding three wheelers on the date of the accident.

The issues before the Court are whether: 1) Norbert Hurst was a joint tortfeasor; 2) Norbert Hurst owes Chevron contribution; and, 3) Chevron owes Hurst indemnity, including attorney's fees and costs for the defense of this suit.

Chevron is seeking contribution from Hurst on the basis that Hurst is a joint tortfeasor with Chevron in connection with

the drowning of Carlton Samuel. Joint tortfeasors are bound solidarily to the tort victim for the entire amount of the damages, but as between themselves, the obligation is divided in proportion to each debtor's fault. La.Civ.Code art. 2103.

In this case, Chevron is obligated to show that it may have been liable in tort to the victim. If Chevron can prove that it may have been liable to the victim, it must then show that it has reserved its rights against possible joint tortfeasors, and that the potential joint tortfeasor did in fact commit a tort that led to the losses of the tort victim. *Parfait v. Jahncke Service Inc.*, 484 F.2d 296 (5th Cir.1973), *cert. den. sub. nom.*, 415 U.S. 957, 94 S.Ct. 1485, 39 L.Ed.2d 572 (1974). Finally, the amount paid in settlement must be reasonable and the settling party is obligated to advise his potential co-obligors of the pending settlement and to invite objections to or participation therein. Assuming that all the conditions outlined above are met, Chevron is entitled to a percentage of the amount it paid in settlement of the main demand herein. La.Civ.Code 2103; *Parfait v. Jahncke, supra.*

■ The Court finds that all of the above requirements set forth have been met except for the requirement that Hurst did in fact commit a tort which led to the losses suffered by the Samuels. Chevron argues that Hurst is guilty of negligence that contributed to the drowning of Carlton Samuel because he was aware of a dangerous condition on his property and failed to warn Carlton Samuel of the danger or to take steps to protect him from it. Chevron argues that Hurst was aware that the deceased frequently entered onto his land for various purposes such as herding, hunting, crawfishing and riding three wheelers. Chevron claims that Hurst was aware that it had dredged Stumpy Bayou. Therefore, Chevron contends that Hurst was negligent in not informing Carlton Samuel of the unreasonable risk of harm created by the construction activities and dredging on the Hurst property.

The Court finds that Hurst did not breach any duty to Samuel and, therefore, was not negligent under the facts of this case. Even if Hurst was negligent, his negligence was not the proximate cause of the accident. The Louisiana Supreme Court has stated that "(i)n determining a defendant's duty to a particular person, consideration should be given to the person's age, maturity, experience, familiarity with the premises and its dangers, and other such factors which might increase or decrease the risk of harm to that person." *Walker v. Union Oil Mill, Inc.*, 369 So.2d 1043, 1047 (La.1979). In no way could it be said that the attractive nuisance doctrine could be applied. Carlton Samuel was an eighteen year old of at least average intelligence. The evidence shows that he was familiar with the area and was frequently on the property for various reasons. Hurst was not present at the time of the accident. The water was not hidden. The evidence reveals that Carlton Samuel jumped into the water with others and for reasons unknown, drowned. The Court can find no negligence on the part of Hurst. Even if he was negligent, the Court finds it was not the proximate cause of the accident. The cause of the accident was the negligence of Carlton Samuel. Therefore, there is no liability on the part of Hurst to Chevron or any other party under the facts of this case.

The next issue for the Court to determine is whether Chevron owes Hurst indemnity, including attorney's fees and costs of defending this suit.

There are two indemnity agreements involved in this case. One is included in the 1975 mineral lease that Hurst's predecessor in title executed with Chevron and which is now held by Hurst and the other co-owners by virtue of their purchase of the property in 1978. The lease provides in pertinent part:

> Lessee, its successors, and assigns agree to indemnify, hold harmless, and defend lessor, their heirs and assigns, agents, employees and anyone for whom Lessor might be held legally responsible or lia-

ble, from and against all suits, claims, demands and causes of action that may at any time be brought or made by any person, firm, corporation, or other entity for death of or injuries to any person, and for damages to any property, including, but not by way of limitation, employees and property of Lessor and Lessee, arising out of or incidental to or in any way connected with Lessee's activities, operations, equipment and facilities on the leased premises; provided further that the above mentioned indemnity is to include reasonable attorney's fees for the attorney selected by the Lessor.

(Note: There is a line drawn through the words "or incidental to".)

In October of 1980, Hurst and the other co-owners executed a "Surface Agreement" which granted Chevron a servitude to construct the road and pipeline referred to above. The Surface Agreement provided for indemnity in favor of the land owners as follows:

... Grantee assumes all risks of and shall indemnify and save Grantor free and harmless of, from and against all claims, demands, actions or suits of whatsoever kind or nature for or on account of any loss, damage or injury to or by persons or property arising out of or caused by the negligent or wanton acts of Grantee, its employees, agents, and/or contractors in the exercise of the rights granted herein and/or the maintenance, operation, use and/or operations of Grantee's road.

The indemnity provision on the 1980 Surface Agreement does not provide for attorney's fees. Attorney's fees are expressly provided for in the 1975 mineral lease. However, the Surface Agreement provides that "in the event of any conflict between the terms and conditions of the mineral lease the terms and conditions of said lease shall prevail."

■ The Court finds that the terms of the mineral lease are more applicable to the facts of this case than the 1980 Surface Agreement. The Surface Agreement provides for indemnity for loss arising out of the operation, use or maintenance of the road. The Court finds that the facts of this case fall more under that portion of the 1975 mineral lease which pertains to claims "arising out of ... Lessee's activities, operations, equipment and facilities on the leased premises." However, even if the 1980 Surface Agreement would be applicable, Hurst may still recover attorney's fees under *Hobbs v. Teledyne Movible*, 632 F.2d 1238 (5th Cir.1980). Furthermore, a careful reading of both the 1975 agreement and the 1980 agreement reveals that the parties intended both to be read together and the overall intent of the parties was to provide for attorney's fees in cases such as that now before the Court.

■ Chevron also argues that the indemnity provisions do not provide for indemnity for Hurst's own negligence. Since the Court has found that Hurst was not negligent, this argument has been rendered moot. The Court would note, however, that even had it found Hurst to be negligent, it would have been inclined to find that the indemnity agreement in the mineral lease covered the facts of this case. While it is true that an agreement providing indemnity for the indemnitee's own negligence must do so in "unequivocal terms" *Polozola v. Garlock, Inc.*, 343 So.2d 1000 (La.1977), the Court finds that the agreements between these parties clearly covers the facts of this case. The lessee (Chevron) agreed to indemnity the lessor (Hurst) from and against all suits (Samuel's suit against Chevron and Chevron's third-party complaint against Hurst) that may at any time be brought or made by any person or corporation (Samuel and Chevron) for the death of or injuries to any person (Carlton Samuel) arising out of or in any way connected with lessee's activities, operations (the excavation of Stumpy Bayou), equipment and facilities on the leased premises.

The Court, therefore, finds that the indemnity agreement provides for Chevron to indemnify Hurst under the facts of this case. Since Chevron did not recover from Hurst on its claim for contribution, it obvi-

ously does not owe indemnity to Hurst for that claim. The Court has reviewed the time sheets filed into evidence and has also reviewed the entire record, including the testimony of Sam J. D'Amico, Hurst's attorney. The Court finds Hurst is entitled to recover the sum of $3,500 for reasonable attorney's fees and costs for defending this action.

Therefore, judgment shall be rendered in favor of Norbert Hurst and against Chevron, dismissing Chevron's third-party complaint with prejudice at Chevron's costs.

Judgment shall also be rendered in favor of Norbert Hurst and against Chevron in the sum of $3,500 for attorney's fees and costs on the counterclaim filed by Hurst against Chevron.

Interest shall run from date of judgment until paid.

Judgment shall be entered accordingly.