**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 29, 2009

Charles R. Fulbruge III
Clerk

No. 08-31194
Summary Calendar

BUTTERFLY TRANSPORTATION CORP; SAMOS STEAMSHIP CO, S.A.,

Plaintiffs-Appellants

v.

BERTUCCI INDUSTRIAL SERVICES LLC,

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:04-CV-3533

Before HIGGINBOTHAM, BARKSDALE, and ELROD, Circuit Judges.

PER CURIAM:[*]

Butterfly Transportation Corporation and Samos Steamship Company ("the Owners") owned the vessel M.V. Maya, and alleged that Bertucci Industrial Services ("Bertucci") failed to fulfill a contract to clean the holds of the Maya, thereby damaging the Owners. After Bertucci prevailed on summary judgment, the Owners successfully appealed and had the case remanded to the district court. The district court's bench trial resolved in favor in Bertucci, and the Owners now appeal again. We affirm.

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties do not dispute this case's material facts, which the prior opinion details in full. *Butterfly Transp. Corp. v. Bertucci Indus. Servs.*, 243 F. App'x 16 (5th Cir. 2007) (unpublished). The dispute continues to revolve around Bertucci's bid—"We offer a no cure no pay price of $145,000.00 to obtain passes for loading for USDA and NCB. We estimate the project will require 5 to 6 days for cleaning, but do not guarantee the number of days. This rate includes a crane barge to place the man-lifts in each cargo hold as well as the gear and chemicals required during mobilization."—and the Owners' "Confirmation of Order"—"[W]e hereby confirm our acceptance of Bertucci . . . to carry out cleaning and preparing all ship's cargo holds (8 cargo holds) for grain loading. Work to commence immediately and to terminate with issuing NCB and USDA holds acceptance certificate for loading grains." After the district court granted Bertucci's motion for summary judgment, the Owners appealed, and a panel of this Court reversed the district court's order and remanded the case to the district court for determination of the contractual intent of the parties, and for consideration of the implied warranty claim. *Id.* The district court then held a bench trial, concluded that Bertucci was not liable to the Owners for damages, and entered a final judgment from which the Owners now appeal.

## II. DISCUSSION

### A. Intent of the Parties

The Owners first assert that the district court erred in ruling that the parties did not intend for Bertucci to remove all residues of prior cargoes. The district court concluded that the parties intended to obligate Bertucci to remove

the amount of residue necessary to obtain the requisite operating certificates. The Owners contend that Bertucci had an obligation to remove all cargo residues from the holds. We review the findings of fact from a bench trial for clear error, and will "reverse only if we have a definite and firm conviction that a mistake has been committed." *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 375 (5th Cir. 2000).

To support their assertion, the Owners rely on the testimony of Captain George Maroulis, who testified that the intended meaning of the Confirmation of Order "was not only to get the certificates issued, but to clean the holds up to the grain standards." He further explained,

> We believe that Bertucci . . . understood what we meant when saying that we were in need of USDA certificate. What we meant was to clean the holds, all of the holds from top to bottom, to a certain extent, to the level that they would be appropriate for grain loading with no cargo damage.

In contrast, Captain Alexander Dublennykh testified that once the USDA and NCB issued the certificates approving the holds for grain loading, neither the ship's crew nor Bertucci would be obligated to conduct further cleaning on any of the holds. Captain Dublennykh also testified that he was not going to double-check the cleanliness of the Maya's cargo holds after he received the certificates approving the holds for grain loading. Captain Elias Katsaros confirmed that Bertucci's work would end once the USDA and NCB issued their certificates, and he also stated, "When the cleaning firm gets the passes from [the] USDA and NCB, that's the time when always their services are terminated." Even though the testimony of Captain Maroulis may conflict with the testimony of Captain Dublennykh and Captain Katsaros, "[w]e cannot

second guess the district court's decision to believe one witness'[s] testimony over another's or to discount a witness'[s] testimony." Moreover, Bertucci's work under the contract was "to commence immediately and to terminate with issuing NCB and USDA holds acceptance certificate for loading grains. . . . with top priority to reduce delay for this cleaning operation." In light of the evidence favoring Bertucci's interpretation, we are not convinced that the district court committed any clear error when it rejected the Owners' position.

## B. Implied Warranty of Workmanlike Performance

The Owners initially claim that the district construed the implied warranty of workmanlike performance erroneously, emphasizing that more than mere reasonable care is required. We review the district court's legal determinations de novo. *See Canal Barge Co.*, 220 F.3d at 375. Even though we have questioned the propriety of employing the implied warranty of workmanlike performance as the model for indemnification in non-personal-injury contexts, *see Rockwell Int'l Corp. v. M/V Incotrans Spirit*, 998 F.2d 316, 319 (5th Cir. 1993); *Bosnor, S.A. DE C.V. v. Tug L.A. Barrios*, 796 F.2d 776, 785–86 (5th Cir. 1986), we need not address that question here because, assuming *arguendo* that the warranty should apply, we find no clear error in the district court's holding that Bertucci failed to satisfy the warranty's elements.

To recover from a contractor for breach of an implied warranty of workmanlike performance, a shipowner must prove that the contractor breached the warranty, and that the breach proximately caused the injury. *Parfait v. Jahncke Serv., Inc.*, 484 F.2d 296, 302 (5th Cir. 1973). More specifically, the essence of a contractor's obligation is the duty to perform the contract's

obligations "properly and safely." *Parfait*, 484 F.2d at 301 (quoting *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 133 (1956)); *Garner v. Cities Serv. Tankers Corp.*, 456 F.2d 476, 481 (5th Cir. 1972). In particular, *Ryan* concluded a party could not breach the duty if it performed the "essence" or "inescapable elements" of a contract. *Ryan Stevedoring Co.*, 350 U.S. at 133. Thus, Bertucci was obligated to properly perform "the essence" or "inescapable elements" of its contract with the Owners, which in this case involved cleaning the holds enough to obtain the necessary certificates. The district court considered *both* a general standard of reasonable care and the contract's specific obligations when it considered how well Bertucci had cleaned the holds and whether Bertucci removed enough residue to obtain the necessary certificates.[1] Accordingly, the Owners' argument regarding the district court's failure to apply the appropriate legal standard for the implied warranty fails.

The Owners next contend the district court erred in finding that Bertucci fulfilled the warranty, an issue that we review for clear error by giving "due regard" to the district court's assessment of witnesses' credibility, *Canal Barge Co.*, 220 F.3d at 375 (quoting Fed. R. Civ. P. 52(a)). The district court found credible the testimony of Bertucci's lead supervisor, Lawrence Murphy,[2] who had

---

[1] The Owners fail to explain how or if the "reasonable care" standard differs from our standard requiring proper performance under a contract. Specifically, the district court stated that an implied warranty of workmanlike performance means "performing work properly under [the] contract." The district court also stated that under the implied warranty of workmanlike performance Bertucci owed the Owners "a duty of reasonable care in performing any services," and the court concluded that Bertucci performed its contractual duties "with sufficient amount of care." These statements show that the district court defined the Implied warranty of workmanlike performance as performing contractual duties "properly" and with "reasonable care."

[2] We find unpersuasive the Owners' assertion that the district court deemed Murphy's testimony credible "in an obvious attempt to insulate its findings from appellate review." *See*

been involved personally in the ship cleaning business since 1963. Murphy testified to the equipment, materials, labor, and cleaning operations used in preparing the Maya's cargo holds for inspection; testified that he and his crew inspected and cleaned "every inch" of all the Maya's cargo holds, including hold number two, the only one of the eight cargo holds in which damaged cargo was found; testified that the captain, chief mate, or a representative of the Maya was present with him when evaluating a cargo hold's condition after cleaning; and described the testing and cleaning operations used on an area in which he doubted the area's cleanliness. Based on this evidence, the district court concluded that Bertucci cleaned the holds "with sufficient amount of care."

Finally, after determining that the parties intended for Bertucci to remove enough residue to obtain the necessary certificates, the district court considered the issuance of USDA and NCB certificates as evidence that Bertucci satisfied the warranty. The Owners argue that the two USDA surveyors could not have performed an adequate inspection of the eight holds in one hour, and that "there was no direct evidence of what the inspectors actually did or did not do." However, the Owners' own witness, Captain Maroulis, testified he had never seen the USDA issue a certificate for cargo hold cleanliness where the USDA inspectors did not inspect the entire hold. Likewise, Captain Katsaros testified that USDA and NCB inspectors do not issue certificates certifying cargo holds as suitable for loading unless cargo hold preparation is 100 percent complete. In light of this evidence, we are not convinced that the district court clearly erred in relying on the issuance of USDA and NCB certificates in its assessment of the warranty, and are not convinced that the district court was clearly erroneous in

---

*Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985).

finding that Bertucci satisfied the implied warranty of workmanlike performance.

## III. CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.