# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-30932

OPERACIONES TECNICAS MARINAS, S.A.S.,

     Plaintiff - Appellant

v.

DIVERSIFIED MARINE SERVICES, L.L.C.; ST. PAUL FIRE & MARINE
INSURANCE COMPANY,

     Defendants - Appellees

United States Court of Appeals
Fifth Circuit
**FILED**
August 5, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:12-CV-1979

Before SMITH, BARKSDALE, and COSTA, Circuit Judges.

PER CURIAM:*

For the summary judgment awarded Diversified Marine Services, L.L.C., in this maritime proceeding about an oral ship-repair contract, primarily at issue is whether a genuine dispute of material fact exists for Diversified's—a vessel service and repair entity—claimed failure to repair, or adequately repair, two vessels owned by Operaciones Tecnicas Marinas, S.A.S.

---

*  Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 15-30932

(OTM), of Colombia.   Because there is a genuine dispute regarding inadequate—as opposed to no—repairs, starting with the disputed scope of the work under the oral contract, the summary judgment was improperly granted in that regard against OTM's three claims presented on appeal.  AFFIRMED in part; VACATED in part; REMANDED.

I.

It is undisputed the parties entered into an oral contract for Diversified's inspection and repair of two offshore crew vessels, M/V MARY TIDE and M/V THOMAS TIDE, before OTM purchased them for $120,000 each in November 2010.  The vessels had not been in service for several years.  The first of many disputes, mainly concerning the repair of three of the vessels' total of six engines, is the scope of repair work to which Diversified and OTM agreed. Diversified asserts it agreed to perform only necessary repairs for the vessels to reach Cartagena, Colombia, from Diversified's shipyard in Houma, Louisiana, asserting OTM planned to have additional repairs done there, where they allegedly would be less expensive.   On the other hand, OTM disputes repairs would be less expensive in Colombia, because parts would allegedly be more expensive there, and maintains Diversified agreed to "make the vessels seaworthy and ready for service", "as typical offshore crew boats upon arrival" in Cartagena.  The parties understood the cost of repairs would increase from the approximately $100,000–$120,000 cost-of-repairs estimate as Diversified inspected the vessels and discovered more needed repairs; they ultimately cost OTM approximately $345,000.

Although the parties do not dispute Diversified was to repair, *inter alia*, MARY TIDE's starboard and center main engines, and THOMAS TIDE's center main engine, they disagree whether Diversified recommended, and OTM approved, other repairs.  OTM contends, and its principal, Gonzalo Martinez, testified by deposition: he was the only one from OTM who discussed

2

the repairs with Diversified and observed its working on the engines only once; he approved all the repairs Diversified recommended as it continued inspecting the vessels; and some important repairs were not recommended to him. Diversified, on the other hand, asserts OTM was present at the shipyard and specifically authorized or rejected repairs.

In May 2011, Martinez, a licensed master pilot with 25 years' experience, and his attorney:  inspected the vessels, started their engines successfully, and made final payment to Diversified.  Martinez raised no major issues, besides noting:  a "bad" hose and clamp in the steering compartment's bilge on MARY TIDE; and an exhaust leak in both generators and a "hole in [starboard] stern from [the] sea wall" on THOMAS TIDE.

The vessels departed Houma for Cartagena on 23 June 2011.  OTM presented evidence that a rebuilt or overhauled engine can operate between 5,000 and 10,000 hours before requiring another overhaul; however, the first sign of trouble occurred just over four hours after departure, when the crews were forced to shut off both vessels' malfunctioning center engines.  By 1 July, the vessels were stranded without motive power and required a tow to Colombia.  Diversified contends OTM caused the problem by overloading the vessels with contraband and excess fuel before departing, in addition to earlier rejecting repairs essential to the engines' function; OTM denies these assertions.

In Cartagena, OTM employed Lloyd's Register, an international marine surveying firm, to survey the vessels.  Lloyd's reported MARY TIDE's engines were "out of order", but did not comment on the cause.  Francisco Hoyos, a surveyor for Lloyd's, testified by deposition the engines at issue in MARY TIDE and THOMAS TIDE showed signs of "lack[ing] maintenance".  He also identified several repairs that are "not permitted ever", such as an exhaust pipe that was improperly repaired by doubling it, which can result in leakage.

No. 15-30932

Lloyd's employed Stewart & Stevenson, an international distributor of Detroit Diesel engines, to evaluate the engines on both vessels.  For Stewart & Stevenson, Oscar Guerrero concluded the vessels' engines did not show signs of recent repair.  As a result, he recommended removing and disassembling the engines "to verify the condition and wear of internal components . . . to later proceed with their repair and reassembly".

OTM filed this action in July 2012, claiming, *inter alia*, breach of contract, negligence, and breach of warranty of workmanlike performance (WWLP) (the claims at issue here).  Diversified moved for summary judgment, contending:  OTM could not prove a breach of WWLP; and OTM's expert witnesses abandoned their own reports and "opinions on causation or whether the engines were overhauled by Diversified".

In opposition to the summary-judgment motion, OTM stated, *inter alia*, Martinez' deposition was being taken and would be a supplement to its opposition.  Diversified's reply, about a month after OTM's opposition was filed, included excerpts of the deposition of OTM's liability expert, David Merrion, a retired executive for Detroit Diesel Corporation with over 50 years' experience; his deposition, however, had not been taken until shortly after OTM filed its opposition.

OTM immediately moved to supplement its opposition to include, *inter alia*, other parts of Merrion's deposition; the motion was first rejected for exceeding the district court's ten-page limit for reply memoranda and failure to show good cause for doing so, and again for failure to include a supporting memorandum.  OTM moved a third time for leave to file its supplemental opposition.

Without ruling on that motion, the court granted summary judgment for Diversified, concluding:  OTM could not prove Diversified did not do the promised work, or that the repairs were inadequate or substandard.

*Operaciones Tecnicas Marinas S.A.S. v. Diversified Marine Servs., LLC*, 127 F. Supp. 3d 669, 673–76 (E.D. La. 2015).  In reaching the second conclusion, the court relied in large part on OTM's stating it did "not have to prove precisely why the engines failed" because, OTM maintained, the evidence showed Diversified did not perform, or negligently performed, the repairs.  *Id.* at 675.  The court concluded OTM failed to show "the vessels' other deteriorating parts or operator error" were not the cause of the vessels' breakdown.  *Id.*  In dismissing the claims, it did not address breach of contract.

OTM moved to alter the judgment under Rule 59(e), asserting:  a genuine dispute of material fact existed; the court erred in not ruling on OTM's motion for leave to supplement its opposition to summary judgment with depositions, including Merrion's; and the law Diversified cited in its reply to OTM's opposition was inapposite.  The motion was denied.

## II.

The procedure for reviewing a summary judgment hardly needs discussion or citation to authority.  It is reviewed *de novo*, applying the same standard as the district court.  *E.g., Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  And, it should be granted only when there is "no genuine dispute [for] any material fact and the movant is entitled to judgment as a matter of law".  Fed. R. Civ. P. 56; *e.g., Celtic Marine Corp. v. James C. Justice Cos.,* 760 F.3d 477, 481 (5th Cir. 2014).  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."  *Turner*, 476 F.3d at 343.

For the reasons that follow, and based on the evidence's being viewed in the requisite light most favorable to the non-movant and drawing all reasonable inferences in its favor, *e.g., Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013), OTM's three claims

No. 15-30932

regarding Diversified's inadequate repairs were improperly dismissed on summary judgment.

As part of its contesting summary judgment, and citing the rule of completeness, OTM challenges the court's:   denying OTM's motion to supplement its opposition to summary judgment; and ruling any such error was harmless.  Fed. R. Evid. 106 (allowing, in response to party's introducing part of a writing, adverse party to "require the introduction . . . of any other part [of a writing] . . . that in fairness ought to be considered").  Because summary judgment was improper concerning the claimed inadequate repairs, we need not reach this issue.  The same applies to OTM's assertion the court held it to an improperly high burden of proof on its negligence and breach-of-warranty claims.

A.

At the outset, the court did not err in concluding OTM cannot prove *no* repairs were done to the vessels.  *See Operaciones*, 127 F. Supp. 3d at 674.  OTM's expert, Merrion, stated in his report, submitted by Diversified, that some repairs were evident, and other experts, Stewart & Stevenson's Guerrero and Luis Santamaria, and Lloyd's Hoyos, could not confirm no repairs were done without further examination.  Moreover, as OTM confirmed at oral argument here, the engines that had been frozen at the time of purchase were started during OTM's pre-departure check of Diversified's work.  OTM does not point to other evidence creating a genuine dispute of material fact for Diversified's doing *no* work.  Of course, this does not preclude Diversified's having performed repairs inadequately for the following claims presented on appeal:  negligence, breach of WWLP, and breach of contract.

B.

In asserting Diversified performed substandard repairs, OTM relies on deposition testimony from its experts, who reported the condition of the

engines upon arrival in Cartagena was inconsistent with engines that had been rebuilt or overhauled recently. Diversified contends, and the court agreed: none of the disputed underlying facts highlighted by OTM are material to its claims; and its experts were not retained to determine the cause of the engines' failure.

Furthermore, Diversified and OTM dispute what duty Diversified owed OTM under their oral contract. OTM asserts no agent was present to monitor day-to-day work, and Diversified was to recommend repairs based on its ongoing inspection. Diversified, on the other hand, states OTM's principal, Martinez, communicated a list of repairs to Diversified, and he declined to repair several parts on the vessels, as well as authorize a typical repair survey by a qualified marine surveyor.

As shown, the parties agree they had an oral contract, but dispute its material terms. Along that line, the three claims at issue here are premised on the scope of the work to be done under that contract; but, there is also a dispute about that. These disputes, of course, bear heavily on there being genuine disputes of material fact.

1.

Under the well-known standard for a negligence claim, OTM must establish: Diversified owed OTM a duty; Diversified breached it; there is "a causal connection between" Diversified's breach and OTM's injury; and, as a result, OTM incurred damages. *Canal Barge Co. v. Torco Oil Co.*, 220 F.3d 370, 376–79 (5th Cir. 2000) (quoting *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991)). In that regard, as the district court noted, OTM concedes it has not attempted to prove the "precise cause" of the engines' malfunction; instead, it maintains it presented sufficient evidence to create the requisite genuine dispute of material fact for whether the claimed substandard overhauls by Diversified caused the engines' breakdown.

7

No. 15-30932

As noted, in opposition to summary judgment, OTM must establish only a genuine dispute of material fact for whether it is more probable than not that Diversified was negligent (which, of course, includes causation) in performing the duty owed OTM.  *See, e.g., Celtic Marine Corp.,* 760 F.3d at 481; *Movible Offshore Co. v. Ousley*, 346 F.2d 870, 875 (5th Cir. 1965).  In other words, at this stage, OTM is not required to prove exactly which part failed, or disprove that "the vessels' other deteriorating parts or operator error" was not the cause of the vessels' breakdown, *Operaciones*, 127 F. Supp. 3d at 675, because OTM showed a genuine dispute exists for whether Diversified's inadequate repairs, more probably than not, caused the engines' malfunction.  *See Marquette Transp. Co. v. La. Mach. Co.*, 367 F.3d 398, 404–05 (5th Cir. 2004) (circumstantial evidence need not disprove all other explanations, but must allow for "strong inference[ ]" defendant's negligence was the cause of plaintiff's damages).

In that regard, OTM presented evidence the engines showed signs of inadequate repair, which conflicted with the conclusions of Diversified's witnesses.  For example, in his deposition, Stewart & Stevenson's Guerrero testified:  he agreed with Santamaria that physical inspection of the engines did not reveal "evidence of [their] having recently [been] rebuilt or overhauled"; and, he saw no evidence of the crews' alleged improper use of the engines.  Similarly, Lloyd's Hoyos testified in his deposition that the apparent condition of the engines in the surveyor's photos was not that expected of engines overhauled in the previous 500 hours.  Merrion, OTM's expert whose entire deposition was not allowed to be included in the summary-judgment record before the district court ruled on Diversified's summary-judgment motion, also stated in his report (as noted, submitted by Diversified) that he saw no evidence of engine overhauls, and that the vessels' first voyage after Diversified's repair "had a slight adverse effect on the engine conditions

considering the low number of hours the engines operated, but cannot explain the absence of evidence of an overhaul or rebuild".

Even considering the disputed evidence regarding causation, and as referenced *supra*, a genuine dispute exists for Diversified's duty under the oral contract.   Obviously, this question is material to causation *vel non*.   If Diversified had no duty to repair parts of the vessels because OTM rejected those repairs, and those parts failed, then Diversified did not breach its duty to OTM.  If, on the other hand, OTM authorized all the recommended repairs, then OTM must merely create a genuine dispute for whether Diversified failed to repair the engines, as agreed, such that the repairs complied with the scope of the contract.  For example, as discussed *supra*, OTM's Martinez testified OTM authorized all of Diversified's recommended repairs, in contrast with Diversified's maintaining OTM rejected important repairs.

That summary judgment was not proper is supported by our court's opinion in *Marquette Transportation Co.*, because, unlike here, the dispute in that instance was decided through a bench trial.  *Id.* at 401.  The district court ruled, and our court affirmed:  in a competition between the parties' reasonable theories of causation, the evidence in support of the ship owners' contention the repair company had negligently repaired its vessels, thereby causing a damaging fire, was insufficient to show negligence and causation.  *Id.* at 400–01 (citing *Marquette Transp. Co. v. La. Mach. Co.*, No. CIV.A. 00-1504, 2002 WL 1809092 (E.D. La. 7 Aug. 2002)).  In reaching its conclusion, the district court relied on trial testimony concerning possible causes of the loose part at issue, and who installed it.  *Id.*  Accordingly, because a genuine dispute existed—each party presented reasonable theories, supported by evidence, of what caused the damage—the matter was properly decided at a bench trial. *See id.*

No. 15-30932

2.

The breach-of-WWLP claim requires OTM to show Diversified breached "the essence of a contractor's obligation[:] . . . the duty to perform the contract's obligations 'properly and safely'". *Butterfly Transp. Corp. v. Bertucci Indus. Servs. LLC*, 351 F. App'x 855, 858 (5th Cir. 2009) (quoting *Parfait v. Jahncke Serv., Inc.*, 484 F.2d 296, 301 (5th Cir. 1973)). Additionally, OTM must show Diversified's breach of that warranty caused OTM's injury. *Id.* Consequently, as the court noted correctly, OTM's burden for establishing its breach-of-warranty claim is indistinguishable from that for its negligence claim. *See id.* at 858 & n.1; *Operaciones*, 127 F. Supp. 3d at 674. Therefore, for the reasons discussed above, summary judgment was improper against OTM's breach-of-WWLP claim.

3.

OTM asserts the court erred in failing to address its claim that Diversified's alleged failure to perform adequate repairs was a breach of contract. We agree. "A ship repairer potentially faces three sources of liability for repairs he performs improperly on a vessel. He may be liable in contract for a breach of his expressly assumed obligations or for a breach of an implied warranty of workmanlike performance that attaches to admiralty contracts[,] . . . [as well as] for the maritime tort of negligence." *La Esperanza de P.R., Inc. v. Perez y Cia. de P.R., Inc.*, 124 F.3d 10, 16–17 (1st Cir. 1997) (citing *Alcoa S.S. Co. v. Charles Ferran & Co.*, 383 F.2d 46, 50 (5th Cir. 1967)) (other citations omitted).

For this claim, the parties disagree whether federal or Louisiana law governs. "It is well settled that a contract to repair a vessel is maritime", *Alcoa*, 383 F.2d at 50; and oral contracts under maritime law are binding, *Kossick v. United Fruit Co.*, 365 U.S. 731, 733–34 (1961).

10

No. 15-30932

At minimum, the record shows a genuine dispute of material fact exists for whether OTM received what it was owed under its contract. OTM paid, *inter alia*, for three engines to be overhauled, and its experts reported the engines did not show signs of recent repair. Moreover, as discussed *supra*, the parties dispute Diversified's obligations under the contract, and whether OTM relieved it of any obligations by refusing certain repairs. That disagreement underscores the remaining genuine dispute. For the reasons discussed *supra*, a genuine dispute existed for whether Diversified breached its contract with OTM.

## III.

For the foregoing reasons, the judgment is AFFIRMED in part and VACATED in part, and this matter is REMANDED for further proceedings consistent with this opinion.